IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LANEDRA M., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:18-CV-077-B-BK |
| § | |
| NANCY BERRYHILL, § | |
| ACTING COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
|     DEFENDANT. § | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the Court now considers the parties' cross-motions for summary judgment. Doc. 14; Doc. 15. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

    **A.    Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for a period of disability and Disability Insurance Benefits under the Social Security Act ("the Act"). Plaintiff filed her claim in March 2014, stating that she became disabled in February 2014, due to arthritis, back injury, depression, and anxiety. Doc. 11-1 at 125; Doc. 11-1 at 213-14. Plaintiff's application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 11-1 at 5-7; Doc. 11-1 at 87-103; Doc. 11-1 at 132-134; Doc. 11-1 at 143.

### B. Factual Background

Plaintiff was 53 years old on her alleged onset date and has a high school education and past relevant work as a collection clerk and loan officer. Doc. 11-1 at 110; Doc. 11-1 at 120; Doc. 11-1 at 213. Because Plaintiff only challenges the Commissioner's findings with respect to her physical health, only those portions of the record are addressed.

In January 2014, Plaintiff was evaluated by Dr. Nimesh Patel, M.D., for lower back and leg pain radiating down her right lower extremity. Doc. 11-1 at 374. Plaintiff had full muscle strength in all extremities and a normal gait and station. Doc. 11-1 at 374, 376. Dr. Patel compared MRIs of Plaintiff's lumbar spine from July 2012 and January 2014, which revealed some progression of spondylosis as well as spondylolisthesis at L4-L5, which appeared to be degenerative. Doc. 11-1 at 374. Additionally, Dr. Patel noted multilevel stenosis, more pronounced at L4-5, but not significantly changed from the prior MRI. Doc. 11-1 at 374, 381. In February 2014, Dr. Patel performed a right-sided laminectomy for decompression of Plaintiff's L5 nerve root at L4 and L5, with fusion at the same level. Doc. 11-1 at 382.

Dr. Patel noted that Plaintiff did well for the next two weeks, but by April 2014, she was limping and complaining of weakness in her leg that she said made it difficult for her to go from a sitting to a standing position. Doc. 11-1 at 372. In June 2014, Dr. Patel noted that Plaintiff had full motor strength in all extremities, she exhibited no atrophy or abnormal movements, and although her gait was antalgic, her grade 1 spondylolisthesis was stable, and her spondylosis did not present significant stenosis except for at L4-5. Doc. 11-1 at 370. Dr. Patel advised Plaintiff that he had done all he could and recommended that she seek physical therapy ("PT") and return to her job with pain management. Doc. 11-1 at 369-71.

In October 2014, Plaintiff presented to Dallas Pain Consultants, complaining of back pain, joint stiffness and swelling, fatigue, and sleep disturbance. Doc. 11-1 at 395. On examination by Dr. Trevor Kraus, M.D., Plaintiff walked with a limp and mildly antalgic gait, and he diagnosed her with post-laminectomy pain syndrome, radiculopathy, and low back pain. Doc. 11-1 at 396. Dr. Kraus advised Plaintiff to start a conditioning program, continue her present treatment plan and medications, use a TENS unit, and exercise at home. Doc. 11-1 at 396-97.

In March 2015, Plaintiff underwent a L4-5 lumbar fusion by Dr. Bala K. Giri, M.D. Doc. 11-1 at 435. In June and July 2015, Dr. Giri noted that Plaintiff was doing well after surgery, although she complained of leg pain—greater on the right than the left. Doc. 11-1 at 435, 438. Plaintiff was using a walker and could walk a block without pain, her motor strength was complete in all extremities, and she had full sensation. Doc. 11-1 at 435, 438. Dr. Giri referred her to PT, started her on a muscle relaxer, and advised her "not to lift anything heavy or do vigorous exercises." Doc. 11-1 at 435. In August 2015, Dr. Giri again referred Plaintiff to PT and advised her against heavy lifting. Doc. 11-1 at 483. In October 2015, Dr. Giri instructed Plaintiff to walk every day and stated that she had no restrictions and was doing well. Doc. 11-1 at 485.

Plaintiff presented for a PT evaluation in September 2015, complaining of lower extremity weakness and intermittent low back pain. Doc. 11-1 at 672. Her gait was described as guarded and slow. Doc. 11-1 at 672. It was noted that Plaintiff's decreased lower extremity strength, endurance, and gait impacted her functional mobility, and she was advised to attend skilled PT to return to her prior level of function. Doc. 11-1 at 673. By December 2015, Plaintiff demonstrated improvements in each of these areas, but continued to demonstrate some

3

deficits, and her progress was deemed to be "gradual" but "good." Doc. 11-1 at 687. By January 2016, she had attended 19 PT sessions and had been making slow, but steady, progress. Doc. 11-1 at 677-707.

In January 2016, Dr. Giri noted that Plaintiff walked with a cane and ambulated around her house and the store. Doc. 11-1 at 487. Shortly thereafter, Dr. Giri opined that Plaintiff's pain was not stemming from the L4-5 foraminal stenosis but was coming from the right hip. Doc. 11-1 at 491. He referred Plaintiff to Dr. Clinton Bell, M.D. for an orthopedic evaluation. Doc. 11-1 at 491. In April 2016, Dr. Bell noted that Plaintiff's pain was "moderate with a rating of 7/10 with most of her pain present in the posterior hip area." Doc. 11-1 at 477. Plaintiff had full range of motion and strength in the hip, a minimally antalgic gait, and walked slowly with a cane. Doc. 11-1 at 478. Upon examination of the lumbar spine, Dr. Bell noted that Plaintiff's range of motion was minimally decreased on flexion, but she exhibited full strength, sensation, and reflexes although straight leg testing was positive for pain over the posterior thigh. Doc. 11-1 at 478. Dr. Bell administered a right hip injection and noted that the plan was for Plaintiff to start PT. Doc. 11-1 at 479.

In May 2016, Dr. Giri referred Plaintiff to a physical therapist for a functional capacity evaluation. Doc. 11-1 at 493. Mark Dodson, P.T., conducted the evaluation, during which he noted Plaintiff's reduced range of motion in the lumbar spine. Doc. 11-1 at 515. Plaintiff had no ability to lift any weight, leaving her in the less than sedentary exertional range, she was unable to squat or bend, and she could only occasionally reach up and reach forward. Doc. 11-1 at 516. Mr. Dodson concluded that Plaintiff showed "significant signs of abnormal ability," which led him to opine that she could perform only less than sedentary work. Doc. 11-1 at 518.

In May 2016, Plaintiff returned to Dr. Kraus, exhibiting a restricted range of motion in her lumbar spine with moderate radicular pain into the right lower extremity in an L5 distribution. Doc. 11-1 at 645. Nevertheless, Plaintiff had full range of motion in all of her extremities, and Dr. Kraus noted that she appeared healthy and had a normal gait and station, with only moderate restrictions on her lumbar flexion and extension bilaterally. Doc. 11-1 at 645-46. In September 2016, Dr. Kraus reported that Plaintiff's functional impairment was moderate and, when present, interfered only with some daily activities. Doc. 11-1 at 657. Dr. Kraus recommended a home exercise program and counseled Plaintiff to increase her activity. Doc. 11-1 at 659.

### C.     The ALJ's Findings

In February 2017, The ALJ found that Plaintiff (1) has the severe impairments of lumbar degenerative disc disease status post fusion and obesity; (2) has the residual functional capacity ("RFC") to perform a limited range of light work with additional postural limitations; and (3) would need to alternate between sitting and standing every ten to 15 minutes at her work station. Doc. 11-1 at 92, 94. The ALJ concluded that Plaintiff had the RFC to perform her past relevant work as a collection clerk and, as such, she was not disabled. Doc. 11-1 at 98.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III.  ARGUMENT AND ANALYSIS

### A.  PT Evaluation

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he gave minimal weight to Mr. Dodson's PT evaluation. Doc. 14 at 9-10. Despite the fact that a physical therapist is not an "acceptable medical source" under the regulations, Plaintiff asserts that SSR 06-03p indicates that opinions from non-medical sources can be valuable, and the same factors used to evaluate opinions of acceptable medical sources, set forth in 20 C.F.R. § 404.1527(c), should be applied to such sources, which the ALJ did not do in this case. Doc. 14 at 10-11.

Defendant responds that the ALJ properly gave minimal weight to Mr. Dodson's findings as they were conclusory, based on a one-time examination, and contradicted the opinions of Plaintiff's treating specialists who imposed far fewer restrictions on her ability to perform work-related activities. Doc. 15-1 at 2-4.

7

"The Social Security Administration classifies medical sources into two categories, 'acceptable medical sources' and other medical sources." *Matthews v. Colvin*, No. 4:15-CV-169-O-BL, 2016 WL 8710706, at *4 (N.D. Tex. Feb. 5, 2016) (citing 20 C.F.R. §§ 404.1513, 416.913). "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 445 (5th Cir. 2009); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Acceptable medical sources "include licensed physicians, psychologists, optometrists, and podiatrists as well as qualified speech pathologists." *Matthews*, 2016 WL 8710706, at *4 (citing *Thibodeaux*, 324 Fed. App'x at 445; SSR 06-03p). "'Other medical sources' can include nurse practitioners, physicians' assistants, chiropractors, audiologists, and therapists." *Id.* (quoting *Thibodeaux*, 324 Fed. App'x at 445). A physical therapist is not an acceptable medical source and, contrary to Plaintiff's implication, the ALJ was not required to apply the factors set forth in section 404.1527(c). Moreover, Mr. Dodson, "not being an acceptable medical source, cannot render a medical opinion relevant to a Social Security disability appeal." *Matthews*, 2016 WL 8710706, at *4 (citing *Porter v. Barnhart*, 200 Fed. App'x 317, 319 (5th Cir. 2006); 20 C.F.R. § 404.1527(a)(2); *cf. Porter*, 200 Fed. App'x at 319 ("[T]he ALJ was not required to rely on the chiropractor's evaluation in making the RFC finding because a chiropractor is not an acceptable medical source.").

Moreover, Mr. Dodson's conclusion that Plaintiff could not perform even sedentary work is contradicted by the statements of Plaintiff's treating physicians (and even her own physical therapist who she saw for 19 sessions). *See* Doc. 11-1 at 396-97 (Dr. Kraus noted a mildly antalgic gait and advised Plaintiff to start a conditioning program, continue her present treatment

8

plan and medications, use a TENS unit, and exercise at home); Doc. 11-1 at 435, 483 (Dr. Giri referred Plaintiff to physical therapy, started her on a muscle relaxer, and advised her "not to lift anything heavy or do vigorous exercises."); Doc. 11-1 at 485 (Dr. Giri instructed Plaintiff to walk every day and stated that she had no restrictions and was doing well); Doc. 11-1 at 487 (Dr. Giri noting that Plaintiff used a cane, but could walk around her home and the store); Doc. 11-1 at 645-46 (Dr. Kraus noted that Plaintiff had full range of motion in all of her extremities, appeared healthy, and had a normal gait and station with only moderate restrictions in her lumbar spine); Doc. 11-1 at 657 (Dr. Kraus reported that Plaintiff's functional impairment was moderate and, when present, interfered only with some daily activities); Doc. 11-1 at 659 (Dr. Kraus recommended a home exercise program and counseled Plaintiff to increase her activity); *see also* Doc. 11-1 at 677-707 (physical therapist noted that Plaintiff was making good, gradual process). Accordingly, Defendant is entitled to summary judgment on this ground.

    B. *Opinions of State Agency Medical Consultants ("SAMCs")*

Plaintiff next argues that the ALJ substituted his own medical judgment for the opinions of the SAMCs who noted at the reconsideration level that while Plaintiff's recent surgery did not render her permanently disabled, she could not perform substantial gainful activity for a 12-month period. Doc. 14 at 12. Plaintiff also asserts that the ALJ did not point to any other medical opinion evidence to establish Plaintiff's RFC. Doc. 14 at 14-15.

Defendant responds that the ALJ did not give significant weight to the SAMCs' opinions because they were inconsistent (1) with the medical evidence of record, and (2) in finding that there was insufficient evidence to evaluate Plaintiff's ability, but then stating that she would be unable to work for 12 months. Doc. 15-1 at 5-6.

9

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. However, the *Ripley* panel explained that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. The panel held that reversal based on an ALJ's failure to fully and fairly develop the record is only appropriate "if the applicant shows that he was prejudiced." *Id.* To demonstrate prejudice, a claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

The Court agrees with Defendant's position for essentially the reasons stated in her brief, and little needs to be added to the discussion. First, the SAMCs' opinions were not entirely cogent. Both of them stated that Plaintiff could not work for 12 months based on her recent surgery, but both also acknowledged that critical information was missing from the case file such that the evidence was insufficient to support Plaintiff's claim of disability. *See* Doc. 11-1 at 137-

10

38 (acknowledging impairment but stating that Plaintiff had not returned two forms which were "imperative to the decision"); Doc. 11-1 at 138 (stating that Plaintiff had not completed a work history form and, thus, "there is insufficient evidence to determine the claim."). Thus, the ALJ did not err in declining to give the SAMCs' opinions much weight.

Second, even if Plaintiff can demonstrate *Ripley* error, there was no prejudice because she cannot show that she could and would have adduced evidence that might have changed the ALJ's decision. As noted *supra*, Plaintiff's treating physicians imposed few restrictions on her other than to avoid vigorous exercise and heavy lifting. Those activities are not within the limited scope of light work which the ALJ found Plaintiff could perform. Thus, Defendant also is entitled to summary judgment on this ground.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 14, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on January 18, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).